and Ms. Mertz, are you here? Yes, I'm here, Your Honor. And Ms. Grimes, can you hear me? Yes, Your Honor. Can you hear me? Yes, Your Honor. All right. Ms. Mertz, why don't you decide? Thank you, Your Honor. Good morning, judges. May it please the Court, my name is Cadence Mertz from the Office of the Federal Public Defender on behalf of Jon Frank. Your Honor, a lot of ink has been spilled on the issue of the MBRA, the Unitary Victim Restitution Act, and ERISA. And I will address that argument first, but I also will attempt to get to the other two arguments that we raised. One is the extent of Mr. Frank's access to his ERISA funds, and the third argument in our brief, which is about the limit on garnishment of certain types of funds under the Consumer Credit Protection Act. Your Honor, it's our position that the resolution of the first issue in this case, whether or not the government can actually garnish funds sitting in an ERISA account, is a fairly simple and narrow question of statutory interpretation. It is based on well-founded principles that this Court has a duty to read two statutes that may appear to be in conflict, to read them harmoniously and to find a way to harmonize that. In this case, we have two widely different statutes. We have a statute that makes restitution for crime victims mandatory, and we also have the Employee Retirement Income Security Program, which is ERISA. And that statute is aimed at protecting funds for pensioners upon their retirement to ensure that they have a stream of income later in life. These statutes on their faces appear to have very little to do with one another. And in fact, the MVRA says nothing about ERISA. It does not clearly repeal ERISA. It does not expressly repeal ERISA. Instead, what the government argues for is an implied repeal, and implied repeals are strongly disfavored under the law. An implied repeal is to be regarded only if it is actually necessary to make the later enacted statute work, and only if the two statutes are, to quote, positively repugnant to one another. Yes, Judge Harris? Counsel, I guess I'm not really understanding why this is an implied repeal case at all. I mean, this implied repeal is, you know, these two, as you say, totally inconsistent statutes. You have no idea which one is supposed to apply. So we infer that based on the chronology, Congress in the second one repealed the first because it would have known about the first when it enacted the second. Nobody is arguing for an implication here. The argument, as I understand it, is we know exactly what Congress wants you to do. We don't have to infer anything. Congress said in the MVRA that notwithstanding any other federal law, this is the statute that governs. So this just looks like a pretty straightforward statutory construction case to me. And indeed, when the Supreme Court deals with these notwithstanding clauses, it doesn't talk about repeal by implication. It just says that those show Congress's clear intent that it wants this statute to prevail over any other, supersede anything that might be inconsistent. Thank you, Your Honor. Your Honor, the reason that it's an implied repeal here is because although the MVRA uses the broad language of notwithstanding any other law, it does not expressly address ERISA, an entirely different statute. It doesn't have to. The Supreme Court has said once you have the notwithstanding clause, that's how Congress makes manifest its intent that this provision should govern in the case of any conflict. Your Honor, that implies that there is a conflict to begin with. And our position is that there is not a conflict here, that these two statutes actually can be read consistently with one another. The MVRA is a later enacted statute that makes zero mention of pension funds, and it is taking the notwithstanding clause too far to read it, to repeal a very longstanding and widely regarded provision of an entirely different statute. This comes particularly only six years after the Supreme Court said that if Congress is going to make exceptions to the anti-alienation provision of ERISA, it's going to have to do that expressly. And so not only does the notwithstanding clause here not bear that weight, but it also comes in the context of the Supreme Court having actually spoken on the issue, that it needs to be a much more explicit description of what is intended. Further, the MVRA does not address the vagaries of ERISA, which is a very complex statute and lays out a scheme of protecting pensioner funds. In putting that sort of weight on the notwithstanding clause, one has to conclude that Congress sort of vaguely and without any kind of express discussion of the ERISA scheme just upended a key piece of ERISA for the purposes of the MVRA. And it simply does not bear scrutiny. And notwithstanding clause, as well, is not often considered to repeal any and every law that would stand in the way of the legal and active law. The key case that the government has relied on actually uses the notwithstanding clause is in a contract. So it is referring to other language in that same contract. And that is an understandable use of a clause like that. However, here you have two entirely disparate regulatory schemes. And to import this notwithstanding clause back 20 years into a totally different statutory scheme is simply putting too much weight on that clause, particularly where there is a reading of the two statutes that allows them to be read harmoniously with each other. Well, can I just, I will let this go in a minute, but what meaning do you think that clause has? Does it do any work at all? Certainly, Your Honor. I think that it permits, it permits the government's enforcement of mandatory restitution under the existing restitution scheme. So at the time that the MDRA was passed, there were several different types of restitution statutes that each operated in a different way. And I think that that allowed, when Congress passed the MDRA, it allowed the new mandatory restitution scheme to operate, even where there might be some piece of prior legislation or law that would have been a hurdle to what the new statutory scheme was. Doesn't that describe ERISA as something that would otherwise have been a hurdle? No, Your Honor. I don't think that that's a fair reading of the notwithstanding clause, largely because it is not the case that the government cannot garnish funds that have been in an ERISA account. So ERISA protects funds in a retiree pension fund, but as they are coming out and paid out to the defendant in that scenario, the government actually can garnish the ERISA funds that are paid out to a defendant. And that's clear, actually, from the language of the Consumer Credit Protection Act. Yeah, but that doesn't help this case because he doesn't qualify for withdrawals yet. He's in his 50s and there would not normally be a payout. If he went in to his account, he'd have a penalty and otherwise have taxes. But I guess the, I'm not sure I understood your answer to Judge Harris's question. It's a pretty strong statement. It's notwithstanding any other federal law. And then it talks about all property or rights to property of the person fined. That's a categorically broad statement that sounds like Congress is trying to trump all the possibilities, including Social Security. Your Honor, the use of notwithstanding is essentially too broad to carry the weight that the government is trying to place on you here. Why is that? What does it mean otherwise? Your Honor, Congress cannot upend ERISA with a vague statement in a later statute that doesn't even mention ERISA. I'm not going to mention all the statutes. The code, the U.S. Code has tons of statutes and Congress didn't want to go through and comb all of them. And also it wanted to cover statutes that it came, the statute book is a dynamic thing. And what Congress is basically saying here, notwithstanding any of those visions, this trumps. That's what they're saying, isn't it? Your Honor, I'm glad you mentioned that because in fact, if Congress had intended to amend ERISA. Not amend, just trump that clause in ERISA, which is a non-alienation. Then Congress comes out with a statute that says, we say ERISA funds are not assignable, are not subject to collection on judgments, because we want to preserve that with the exception of when the federal government has a debt. That's really what they're saying. Your Honor, again, I think that. Your Honor, the idea that Congress would use that one clause to undo a significant piece of ERISA to trump ERISA, which has. What if they added, we mean what we say in this, by court rulings. Your Honor, I don't think that would. You suggest that. We shouldn't give it meaning because it's just one phrase and it implicates a bunch of statutes. So how are they going to phrase it differently if their intent was to trump, give the federal government the ability to attach, garnish, or collect from any funds of any kind of any person, despite any other law. How would they say it? Your Honor, I think they would. They would. First, they would mention ERISA. Why not all the other statutes that are possibility? I mean, there's all kinds of communities, exceptions from levies and all tools of trade and workers' compensation benefits and social security benefits, disability, pension plans of all kinds. There's the executive plans, plans involving options. I don't know quite how you would want them to do that if they wanted to refer to all statutes categorically. Your Honor, to begin, I think they would mention ERISA, but I would also point the court to the later amendment of ERISA that Congress did only a year after passing the NBRA. And that is actually indicative of the complexity of the kind of amendment that the government's position says was affected with a notwithstanding clause. In order to make funds in an ERISA pension fund available to plans when the beneficiary had actually committed misconduct in connection with the plan, there is a lengthy amendment to ERISA that permitted the fund to offset that person's pension funds, and it took several pages of amendments to actually make that work. Because of the long-standing congressional protection for pension funds. And so I would point the court to that amendment as an example of how Congress would do it if it sought to. Judge Keenan. Yes. Ms. Virch, you're really swimming upstream, though, in terms of the other circuits and where the analysis that they've engaged in. It seems to me like if you look at the Ninth Circuit, U.S. versus Novak, the court's very thorough in its analysis. It doesn't just rush through it. And it talks about the tax levy statute and how there's no principled basis to treat the language, to treat the tax levy statute differently from ERISA. I mean, what's wrong with the reasoning of the four circuits who went the other way? Tell me what's deficient about their reasoning. I will do that, Your Honor. I would also just point to the Novak dissent. That was an en banc decision, and there are five judges that dissented on the same grounds that we're putting forth to this court. What's wrong with that? What that indicates is that your argument is perfectly reasonable, but it may not carry the day. I understand it may not, but we certainly think it's the right outcome. That's fair enough. That's fair enough. Thank you, Your Honor. Your Honor, to answer Judge Keenan, your question, the Novak decision, we don't think appropriately weighs what the Supreme Court has said about statutory interpretation and that these two statutes actually can be harmonized. I wanted to point quickly to the Social Security Act reference that's in the notwithstanding clause because I think it's important. The government has pointed out that the Social Security Act reference must mean that the omission of ERISA doesn't mean that ERISA is not included. I see my time is out. If I may just… You can finish that thought. Sure. Thank you, Your Honor. There's a significant difference between the Social Security Act and ERISA. The Social Security Act is a large general fund that belongs to all Americans from which each beneficiary is paid out funds. Under ERISA, in the kind of 401k that we're talking about in this case, that is a set of earnings that Mr. Frank contributed into his fund and now sits there protected and accruing over time until he can take those payments. So there is no lump sum such as the government would say. I'm not sure that's an accurate assumption because I think it's included because the statute intends to get the property, all the property of a person. And Social Security, as you know, number one, pays out a lot more than people pay in. Number one and number two, the money isn't all there. It's taxed yearly. And so people who write thoughtfully about Social Security, basically it's a welfare plan that whether you have a right to it or not might depend on the funds. But it's not a corpus of funds like a pension fund that they're just paying out. Anyway, I'm not sure that's worth debating on this. If I may just very quickly respond, Your Honor. The distinction here is that the government is seeking to alienate the corpus of the fund that belongs to Mr. Frank that is sitting in the Schwab account. But the government could, under the current law, obtain garnishment of the payouts from that fund just as it could under the Social Security Act and the other funds that are mentioned in the exemptions under the MVRA. Thank you very much. All right, we'll hear from Ms. Grimes. Good morning, Your Honors. May it please the court, Laura Grimes for the United States. I would like to hone in immediately on this discussion that counsel was having with the court about whether or not these statutes can be held or can be harmonized with one another. And they can't. They're both talking about predator rights. The 3613 describes the rights that the government has as predator when enforcing restitution orders. And ERISA, on the other hand, limits the rights of predators and says, no, you can't touch these things. Those are in conflict. MVRA says yes, ERISA says no. And so in that case, one of them must yield. And as Judge Harris pointed out- Why are they in conflict when Congress creates the exception and says we're now making an exception? In other words, it's no longer, it's no longer, it's not repealing anything in the ERISA plan. It's just trumping it with respect to a certain type of debt. I believe that's- Maybe it's semantic. Maybe that's semantic. Yes, Your Honor. I believe we're getting to the same place, which is that the MVRA 3613 has said notwithstanding any other federal law. And that sweeps it aside. To the extent that ERISA conflicts, it's swept aside. To the extent that they lined up, that's fine. They can still be read like that. But if they conflict, the Supreme Court has said that the use of notwithstanding indicates which statute is supposed to trump when there's clout. And this makes sense because when Congress enacted MVRA, it wasn't just, as counsel suggested, to make restitution mandatory, although that's true. It was also to make sure, as this Court noted in Grant, and the Supreme Court noted in Dolan, and many, many courts have noted, it's to make victims actually pay. To actually get money back to victims. And in order to make that happen, Congress told the government, enforced these restitution orders, and gave the government really powerful tools to do so. And that's what 3613 represents. And every court to examine the issue has come to the same conclusion. That the language of 3613 clearly indicates that Congress intended to breach all property and rights to property of a defendant, just as if it were the IRS enforcing a tax levy. And it does that in several ways. First, it says all property and rights to property, which in the tax context has been held to mean every interest in property a defendant may have. It says not withstanding any other federal law, which as we discussed means sweeps aside all contrary provisions. And then it also, just to make it more clear what it's saying, says this restitution lien functions as if it were a federal tax lien. And I don't understand there to be any dispute about the fact that the IRS can reach a risk of protected accounts when it's enforcing federal tax liens. And so the same is true here. Congress very clearly employed language from the tax context that you must presume Congress knew had been interpreted to allow the IRS to reach arrested accounts. And Congress then made the decision to use functionally that same language, in some cases exactly that same language, in this statute. And so the defense bears the burden here of demonstrating why an exemption applies. And it just can't clear that hurdle here because the statute simply indicates that the government can reach all rights to property just like it does. And in terms of- Counsel, can I ask you a quick question? And I don't want to get you too far afield too soon. So the magistrate judge wrote an opinion agreeing with you on everything you've just said. But the magistrate judge said that as a result, the government can take the account, but with the exception of any tax withholdings by Schwab under the terms of the plan. And the terms of the plan say that Schwab will withhold 20%. And that the defendant in this case, or now the government, stepping into the defendant's shoes would only get 80%. So why is the government entitled to more than that? Your Honor, I'm going to answer that question in several parts. But in the first instance, the plan documents also say that a permissible- that the only permissible alienation is a garnishment or levy, a valid federal tax levy, I believe is the exact wording. And because we function, the restitution lien functions like a federal tax lien, the government can come in under that provision. But in terms of what the plan documents say, the government believes that the plan administrator is in the best position to determine what those plan documents mean. And that it might vary case to case. In this case, is there any doubt? In other words, if the government has to- if the collection effort has to stand in the shoes of Mr. Frank, Mr. Frank, number one, has to pay a penalty. Number two has to, according to the terms of the plan, turn over 20% for taxes with the help of- by Schwab. And so in this case, I don't know which one's applied first, but in this case, if you had $100, Frank would get $70 if you added the two together. I don't know if that's the right way to do it. Mathematically, but let's assume 20% plus 10%. So out of $100, Frank would get $70. Seems to me the government should take $70 and give him credit for the $100 and turn over, let Schwab collect the 20% for the taxes and take the 10% and pay it to the treasury. That's if they're standing in the shoes. What's your response to that? So I think that there is a distinction to be made between what the defendant's interest is in the property and what his liabilities are. He knew when he earned this money that he was placing it in a tax deferred vehicle and that eventually those taxes would become due. And that's what would happen here if the government were able to garnish the account. Well, then you're saying that argument would also vacate the 10% penalty. Yes, Your Honor, and that is in fact what happened. The IRS has letters and many courts have found that the 10% early withdrawal penalty is inapplicable when it's an involuntary withdrawal like that here and in a tax levy situation. And so if that penalty doesn't apply to a creditor, the government is the only creditor that can reach it. To a government creditor reaching that money, it seems difficult to understand why. Well, it wouldn't be reachable with government, it would be reachable if it attaches to the asset. The government's looking for the asset and the asset that Frank has is subject to the 20% withholding and the 10% penalty. And so should the government get more? Because if it gets more, then it imposes those duties on Frank. Now, at this point, Frank would have to pay all the taxes, probably maybe he says 35%, but he has to pay the taxes on the withholding and he has to pay the penalty. So now the restitution is far larger with respect to him than the amount. So first of all, there are IRS letters, there are court opinions that that 10% early withdrawal penalty does not apply in a compelled withdrawal like we have here. In terms of the taxes, if the 10% early withdrawal doesn't apply, it is difficult to see why defendant's tax obligation would apply to the government as creditor when the government seeks to take this money to satisfy a judgment. And so again... Counselor, can I ask you two questions? I'll ask them both. One is that it looked like the Seventh Circuit in Syed said the contrary. That yes, you can take, you can get the lump sum because the defendant could get the lump sum too. So you stand in the defendant's shoes, you can get the lump sum, but you will take it, government, subject to the tax penalties faced by the defendant for early distribution of his retirement funds. So I'm concerned about breaking with another circuit on this. And I'm also concerned that the district court never looked at any of this. And I'm not exactly sure what happened here because the magistrate judge did say, like, you got to look at the terms of the plans, you have to figure all of this stuff out. And the district court didn't. The district court instead granted this sort of 10% matter of equity kind of allotment to the defendant. I mean, one possible solution, it strikes me, is we could send this back to the district court and tell the district court to look at the IRS letters and figure out, you know, if the government gets what Frank would get, standing in Frank's shoes, let the district court figure out what that amount is. Yes, Your Honor, and that would be a possible outcome. We do think the record here is sufficient, though. If the plan administrator is supposed to determine which provision is applicable, whether it's the tax levy provision or the 20% withdrawal provision, it seems like the plan administrator would be best situated to do that and determine what happens in this case and every other case. And, you know, there, I think, are policy arguments on either side. Yes, Your Honor. Yeah, why would we say, why would this be an issue for the plan administrator? Because what we have here is what is the reach of the restitution statute? That's a legal issue. The government is saying to be determined by the district court in the first instance, but that's a legal question as to the reach of the restitution statute, not how the plan should be administered, isn't it? Yes, Your Honor, and the district court did reach it. The district court determined that Mr. Frank has a right to the entirety right now. He also has attendant tax obligations because of his choice to put the money in the account. And the district court determined, as Judge Harris said, as a matter of equity, that it would give effect to the government settlement offer to give defendant 10% towards any possible future tax ramifications. You know, I think there are policy arguments on both sides. On the one hand, it seems terribly unjust and inconsistent with the MVRA to pass on the tax consequences of defendant's choice to put things in a tax deferred account on to the victim. Oh, you can't hold him responsible for that. That's a choice he made early on before even having the restitution argument. He decides where to put his money, whether it's in a savings bank or in a pension plan or in his mattress. It seems to me the government takes whatever assets he has in their present state. I mean, the fact he made a choice 20 years ago when he was working with a company to participate in the pension plan, I can't see how that's relevant at all. Take his assets the way they are today. And if they're under the bed in the form of gold, I suppose you can take them. Again, the distinction that the government drew below and would make now is that there is a difference between his interest in the property, which is in the law. But he defined that. That's what he chose to give up and what he chose not to. He could have paid taxes back in a form of plan when he initially put the money in and put in after-tax dollars. Most people like to let the plan accumulate and defer the taxes. But that choice is an economic choice that defines the nature of the property. And in this case, he made that choice legitimately, not connected with anything in this case. And he now has pension money. I love some pension money that's subject to taxes. He shouldn't get penalized. There's no basis to go back and say he made a choice and therefore you don't add on to what he has to pay. And that's essentially what the government's position. We're going to make him not only turn over the assets in there, we're going to tell him he has to pay taxes, which he otherwise would not have had to pay. Your Honor, he would have to pay those taxes. Well, he'd have to pay the income taxes on a deferred basis later. Yes, Your Honor. The penalty taxes, you're saying he doesn't have to pay now? The 10% is inapplicable. So he does not have to pay. No one will be paying that now. And I think there's a reason for that. Will there be a 10% levy at any time? My understanding of the law is no. Standing here today, I do not... Why has it been given then in this case? That was a settlement offer the government made in the interest of settling the case before litigation. The district court thought it was fair and decided to let it play out and the government didn't challenge that. That's sort of strange, isn't it? I think on balance, the government believed that it was a fair outcome. I understand that, but we're supposed to be determining how much money can be attached by garnishment. Correct. And so is there a notion that we're enforcing a settlement in this case? No, I don't think so, Your Honor. The district court has... It wasn't done by any settlement agreement, was it? No, Your Honor. No. In her judgment, she thought that was an equitable resolution and the government didn't object. If I may, I would like to move on to the Consumer Credit Protection Act unless there are more questions. I'm sorry. If you're ready to move on, I just want to make sure I understand where we are on this 10% penalty. Was this brief? Is it your position on behalf of the government, I guess? Is the government saying now to us, there will be no 10% penalty, do not worry about that? And you can make that so? I don't speak for the IRS and I cannot, but there are many cases, there are IRS letters, there are lots of IRS guidance. If you Google IRS tax levy 10% withdrawal and... Or maybe you could send us some cases. That's the way we usually do it. I mean, if you want us to rely on this, it's not briefed or anything, right? No, yes, Your Honor, it is. Okay. It's in here? Yes, Your Honor. Okay. Okay. Okay. So may I move on or would you have any more questions? No, as long as we have your position on this. Okay. Yes, Your Honor. It's in the papers. Returning to the Consumer Credit Protection Act, the defendant's argument is essentially that because the money deposited into the 401k originally, how does it source the defendant's wages? It has retained that while the plan kept it in trust for the defendant to be distributed at a later date. And that just doesn't work with the way the Consumer Credit Protection Act defines earnings under the statute. It says wages, paychecks, bonuses, and also includes periodic payments from pension and retirement money. And the statute itself is doing a lot of work here. By including the periodic payments, there is a strong implication that Congress intentionally excluded non-periodic lump sums like we have here. And that conclusion is further bolstered by looking at the nature of the property here, and Kokoska is controlling it. Kokoska talked about how not everything that has its source in wages retains that quality. And the court there pointed to savings accounts and automobiles. And then the tax refund that was at issue there. This situation is much more akin to a savings account than it is to regular wages. The Kokoska court noted that the point of the CCPA was to protect periodic payment of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. And that's why the statute says what it says. It says payment for services such as wages, bonuses, and also these periodic payments. Here, defendant took his wages, essentially put them in an investment or savings vehicle. That money is employer-matched contributions. The money was all pooled together. It's been invested in the market. The present value of that account is $673,251. That money, he can pull it out at any time. Yes, subject to penalties under the plan if he were to voluntarily withdraw. But he has control here. This is no longer payment for personal services. This is just his money. And once that happens, it's no longer within the realm that the CCPA is meant to protect. It's just like the savings account that the Kokoska court mentioned. I'm sorry. I'm sorry, counsel. I can't find the part about how their IRS letter is saying that the 10% withdrawal penalty won't be imposed in a case like this. But that is briefed in here. I do apologize. I can't find it. Your Honor. I mean, it just seems like a tax law question that I'm not expert on. Yes, Your Honor. I'm trying to find the section where we go to. I know where it is. I'm sorry. You can. I have no idea whether I would rest on the papers. And so if I could use the balance of my time to find it, I'd be happy to do that. No, it's okay. It's all right. And the government rests on the papers if there are no further questions. Okay. Thank you very much. Okay. Ms. Mertz. Thank you, Your Honor. Your Honor, the questions that have arisen regarding the situation with the tax, whether or not the tax would be assessed, whether or not the plan administrator would make the decision on whether or not to withhold the 20% or how much to pay out. These are all exactly the kinds of questions that you would expect Congress to have addressed if it were going to have the MDRA trump this portion of ERISA. So we would just point to that confusion and the lack of clarity as further evidence that that was not the intent of Congress in enacting the MDRA. I wanted to just point to the language tax levy, which the government has employed, versus tax lien, which is what is actually authorized by the MDRA. The MDRA, section 3614, refers to the creation of a tax lien. A tax lien is not a tax levy, and a levy is an enforcement mechanism, essentially. But it creates a lien as if these things were tax liens by the IRS, but it actually does not say that that's what they are. What the plan permits is alienation in only two circumstances, involuntary alienation in two circumstances. One, a qualified domestic order, or two, in the event of a, quote, proper IRS tax levy. And the piece of law that the government is referring to that permits the avoidance of that 10% penalty is only when there is an actual IRS tax levy. So, again, it is not at all clear that that 10% amount would be avoided. The language is not clear, and to leave it up to the plan administrator would really seem to illustrate that a risk is not included in Congress. I understand you to be arguing that with respect to the, if we were to agree that the government could reach monies in this plan, I gather you would prefer to have the district court address the amounts, 20% and the 10% issues? I think there probably is room for further fact-finding in this case. The plan documents, I believe, would control what Mr. Frank actually has a right to, and it is clear from the plan documents that he has a right to no more than 70% by the terms, but there are additional tax... Well, the 20% the district court didn't even address. Correct. That's correct. Just to move on to the Consumer Credit Protection Act, unless there are other questions about these issues, the government is performing something of a rhetorical state of hand. The money in the Schwab Fund was earnings going in. There's no question about that. It was deferred earnings going in, and if it were being paid out, it would be earnings. The Consumer Credit Protection Act makes that clear. I know, but at some point, you know, the difficulty is... The typical protections throughout both federal and state laws is to let a person take home a portion of his paycheck. And so there are all kinds of exemptions that provide that when a person earns $100 a week, he can take home some of that money to pay for shelter, food, etc. And garnishment in the hands of the employer means that the employer will take 20% toward the debt and 80% to the employee. The employee takes the 80% or the employee takes 100% of his earnings and takes a portion of them and puts them in a savings account. That was earnings, but now it's savings. It no longer even fits the structure of what's being protected. There is an exception with respect to a pension plan. When you get to the, you've retired and the pension plan keeps paying you 60% of your salary for the rest of your life. That, according to the Section 1672, would also be subject to the exemption. Now here, this defendant accumulated a savings account, so to speak, a lump sum savings account. And while he did so from earnings, they are not now earnings, they are saved money. And it's an interesting line to try to draw, but it seems to me that's a little bit what 1672A is trying to get at, isn't it? Your Honor, respectfully, I disagree. And the reason is this, and my time is out, if I may respond. Please. Thank you, Your Honor. If Mr. Frank had taken these funds and put them into a savings account, when he took them out of the savings account, he would owe no taxes on them because he would have paid that. But these are deferred earnings that are sitting in a protected account that have never been taxed. They remain earnings. I mean, there's all kinds of taxable and non-taxable vehicles these days. You can buy municipal bonds and you can buy, you can go into various savings plans where you pay taxes up front, but then there's no taxes on the earnings. You can put deferred tax plans and so forth. How you save your money seems to me isn't a question of whether that money is compensation for personal services. The compensation for personal services is the compensation paid by the person receiving those services to him. And as in any attachment or garnishment, there's a limitation on how much of that money you can take. And I think that's what this honors. Your Honor, if I may, this is compensation for personal services and it is treated on all sides. The beginning, when it's going in, if it were to come out in a lump sum now, or if it were paid out periodically at a point where he began withdrawing, it would be treated as earnings in each of those scenarios. So even if he were today to exercise a voluntary option to liquidate the fund, it would be taxed as earnings and treated as earnings by the IRS. So it has not lost its character sitting in the fund. Thank you. Thank you, Your Honor. This is an interesting case and our normal practice would be to come down and shake hands with both of you for your good arguments and welcome you to the court. That's a tradition that goes back to Judge Parker in the 1930s. It's a lovely tradition which we have not given up. But as you know, we're prevented from doing so now. So we greet you on behalf of the court and this will have to suffice at this point. And Ms. Grimes, normally when I came down to shake your hand, I would say I found that part in the brief and I apologize for the confusion. Very good. Very good. Okay. Well, thank you very much. We'll take a five minute recess and the judges will meet in the roping room and lawyers can go home and have lunch. Thank you.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris